UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GUILBEAU MARINE, INC. | * | CIVIL ACTION NO. 20-04 |
| | * | |
| VERSUS | * | SECTION: "G"(1) |
| | * | |
| T&C MARINE, LLC, ET AL. | * | JUDGE NANNETTE JOLIVETTE BROWN |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court, is the Motion for Leave to Amend Complaint filed by plaintiff Guilbeau

Marine, Inc. ("Guilbeau"). (Rec. Doc. 19). For the following reasons, the Motion is DENIED.

Background

This lawsuit arises out of the December 2018 burglary of the M/V CHAD G, which resulted

in the theft of copper out of the engine room. According to Guilbeau, the owner of the M/V CHAD

G, it suffered $283,000 in damages. Over a year before the burglary, the M/V CHAD G was seized

by the United States Marshal's Service ("USMS") pursuant to an arrest warrant issued in Civil

Action No. 17-8502, *South LaFourche Bank &Trust Co. v. M/V LORRAINE G, et al.*, ECF # 7

(E.D. La. Sept. 25, 2017), an action filed by South Lafourche Bank and Trust ("SL Bank") to

enforce its mortgage on a number of vessels, including the M/V CHAD G. The court appointed

T&C Marine, LLC  ("T&C") as the substitute custodian. Id.  ECF # 8 (E.D. La. Sept. 25, 2017).

T&C had entered into a Vessel Maintenance Agreement with SL Bank pursuant to which T&C

acknowledged that it owed a fiduciary duty to the owner to safeguard the M/V CHAD G, that it

would maintain insurance at all times, and that it would not allow any persons other than Nacis J.

Theriot (the owner of T&C) to enter the vessels unless prior approval was obtained. Additionally,

Theriot executed an Affidavit of Substitute Custodian and Hold Harmless Agreement from

1

Substitute Custodian. On September 11, 2018, Guilbeau filed a voluntary petition for bankruptcy relief.

At the time of the burglary in December 2019, T&C was serving as substitute custodian. In the original Complaint, Guilbeau alleges that T&C is liable for Guilbeau's damages because T&C had a duty to protect the M/V CHAD G. It asserts a claim for negligence against T&C; a claim for breach of contract based on the assignment to Guilbeau of SL Bank's claims under the Vessel Maintenance Agreement; [1] a claim against Stonington Insurance Company ("Stonington"), which insured the M/V CHAD G; and, in the event it is determined that T&C did not have liability insurance that covers the damages to the M/V CHAD G, a claim against Paul's Insurance Services, LLC ("Paul's Insurance"), for issuing a false Certificate of Insurance.

It filed this action as an adversary proceeding on November 4, 2019. Upon the motion of Paul's Insurance, the bankruptcy reference was withdrawn on February 18, 2020. Trial is set to begin on March 15, 2021, and all discovery must be completed by January 15, 2021. The deadline to amend pleadings was July 24, 2020.

Guilbeau filed a Motion for Leave to Amend its Complaint on July 11, 2020.[2] It seeks to join Theriot, the sole member and manager of T&C, as a defendant. It alleges that Theriot intentionally misrepresented the truth when he executed the Hold Harmless Agreement and Affidavit of Custodian and seeks to assert a claim for fraud against him. Guilbeau alleges that Theriot had no intention of having T&C provide gangway guard, security to man the post of substitute custodian, or follow the other General Rules of Custodian as he attested he would. Guilbeau also alleges, upon information and belief, that Theriot authorized T&C to distribute

---

[1] Guilbeau alleges that SL Bank assigned its claims against T&C, Stonington, and Paul's Insurance pursuant to the Confirmed Plan of Reorganization in the bankruptcy case and a Forbearance Agreement.
[2] Guilbeau selected August 12, 2020 as the submission date.

draws to himself as the sole member to pay Theriot's expenses and that such distributions caused T&C's insolvency. It seeks to assert a claim for wrongful distributions under La. Rev. Stat. § 12:1327 and 1328 and a revocatory action under Louisiana Civil Code article 2036.

Guilbeau argues that its amendment should be allowed because it was timely filed in advance of the pleading amendment deadline and no party will be prejudiced. It submits that it has no bad faith or dilatory motive and explains that it did not previously join Theriot because it was optimistic about settlement, but following the unsuccessful settlement conference, it reevaluated the case and determined it had a viable claim against Theriot. It points out that this is its first amendment and it was not filed to cure any deficiencies in its pleadings. It argues that its claims against Theriot are not futile.

T&C opposes. It submits that Guilbeau's attempt to mischaracterize Theriot's execution of the documents as reflecting his personal signature as opposed to his signature on behalf of T&C is disingenuous. It points out that in the opening paragraph of the Hold Harmless Agreement, Theriot attested that he was familiar with the vessels "as member/Manager and sole owner" of T&C. Additionally, T&C points out that Theriot attested merely that he "believes that he has adequate facilities and supervision for and can safely keep said vessel." T&C submits that this obligation is completely subjective and it will be impossible for Guilbeau to show fraud. It notes that Guilbeau's proposed Amended Complaint is not verified and submits that its allegations of fraud are, therefore, wholly unsupported. It points out that the General Rules of Custodian speaks to the Custodian, which is clearly T&C and not Theriot. Further, it submits that if there is any ambiguity in the forms, this should not be construed against T&C because the forms were provided by the USMS.

T&C also raises arguments that seem to primarily challenge the existing complaint. For example, it points to an affidavit[3] in which Theriot attests that SL Bank's counsel announced in a board meeting that because it did not want to pay for a 24/7 custodian it obtained authorization from USMS to simply have its agent "on call" for the vessel.[4] Thus, it insists, it was properly relieved from live-aboard custody. It also insists that, as alleged in its answer, at all pertinent times, T&C was acting as an agent of and at the direction of SL Bank.

T&C further challenges Guilbeau's claims under La. Rev. Stat. § 12:1327 and 1328, arguing that a member or manager can only face liability under those statutes in the case of fraud, but again it insists that Guilbeau's unsupported and unverified allegations of fraud based upon Theriot misrepresenting his beliefs about the facilities and supervision, cannot meet that burden. Further, T&C argues that Guilbeau cannot state a claim under §1327 because it is not a creditor based on this lawsuit alone. It insists a judgment in Guilbeau's favor would first be required.

Finally, T&C addresses the factors weighed by the court in considering a motion for leave to amend. It argues that undue delay, bad faith or dilatory motive, undue prejudice, and futility, all weigh in favor of denying leave. It insists that Guilbeau seeks merely to fish into Theriot's personal finances. It argues that the amendment is frivolous and intended to harass and increase the cost of litigation.

In reply,[5] Guilbeau argues that it is premature to address the merits of its claims. In any event, it argues that Theriot can be liable as an individual for his own fraud even if he signed the Affidavit of Custodian and Hold Harmless Agreement on behalf of T&C. It also argues that it has

[3] Although T&C does not point it out, in this same affidavit Theriot also attests that all actions taken with respect to the CHAD G were taken as a representative of T&C and not in his personal capacity.
[4] Theriot also attests that T&C was never notified that it was to be a 24/7 custodian on the Guilbeau vessels. However, T&C does not explain how or when it came to learn of SL Bank's announcement at its board meeting.
[5] Guilbeau failed to move for leave to file a reply in accordance with the Local Rules, so it's reply was marked deficient. Nonetheless, the court considers the arguments raised therein.

4

a right to bring claims under La. Rev. Stat § 12:1327 and Civil Code article 2036 even though its claims have not been liquidated to judgment.

Law and Analysis

*1. Standard for Leave to Amend*

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties or by leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." <u>Smith v. EMC Corp.</u>, 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." <u>Yumilicious Franchise, L.L.C. v. Barrie</u>, 819 F.3d 170, 177 (5th Cir. 2016) (quoting <u>Schiller v. Physicians Res. Grp. Inc.</u>, 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." <u>Schiller v. Physicians Res. Grp. Inc.</u>, 342 F.3d 563, 566 (5th Cir. 2003).

In assessing whether a proposed complaint is futile, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Stripling v. Jordan Prod. Co., LLC</u>, 234 F.3d 863, 872–73 (5th Cir. 2000) (quoting <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000)). In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." <u>*In re* Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "The plaintiff must plead enough facts to state a

5

claim to relief that is plausible on its face." Id. Yet, courts have also held that "[w]here viability of a claim is at least facially possible, futility does not provide grounds for denying an amendment." Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (HANO), No. CV 15-1533, 2017 WL 1079164, at *2 (E.D. La. Mar. 22, 2017). In such cases, the court may find that its "ability to decide the viability of the claims at issue will benefit from full briefing within the context of a motion that is devoted to the substantive issues." Id.

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. "The particularity standard of Rule 9(b) generally requires the plaintiff to plead the time, place, and contents of the false representation and the identity of the person making the representation." United States v. Bollinger Shipyards, Inc., 775 F.3d 255, 260 (5th Cir. 2014). This standard "ensures the complaint 'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.'" U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009) (quoting Melder v. Morris, 27 F.3d 1097, 1100 (5th Cir. 1994)).

   2.   *Analysis*

The court focuses its analysis on the alleged futility of Guilbeau's amendment because that is the thrust of T&C's opposition. First, the court considers the viability of Guilbeau's claim that Theriot bears personal liability for executing the Hold Harmless Agreement and the Affidavit of Custodian. The Affidavit of Custodian states:

> I, T&C Marine, L.L.C., while acting as appointed custodian aboard the M/V CHAD
> G, do agree that I will comply with all of the general rules. . . . At no time will I

6

leave my post or let the ship or property out of my sight without being properly relieved. I assume full responsibility for the safe keeping of this ship and/or property.

(Rec. Doc. 19-4). It is executed by Theriot over a line labeled "Custodian." The Hold Harmless Agreement is also in the form of an affidavit or declaration. It begins, "Nacis J. Theriot, being first duly sworn, deposes and says . . . ." Among other things, Theriot acknowledges that T&C has been appointed substitute custodian and that he is the member/manager of T&C. (Rec Doc. 19-3, at 1). Yet he states that "*he* will perform the following services for said vessel during his custodianship," that "*[a]ffiant* has adequate liability insurance to adequately respond in damages for loss of or injury to the defendant vessel, during said custody," and that "*affiant* agrees to accept substitute custodianship of the defendant vessel." Id. at 1-2 (emphasis added). His signature is typed and it appears over a line labeled "Nacis J. Theriot." The document does not make explicit that Theriot is signing on behalf of or as agent for or in his capacity as the member or manager of T&C.

Guilbeau seeks to hold Theriot liable for statements made in the Hold Harmless Agreement and the Affidavit of Custodian under two theories. First, it takes the position that Theriot undertook the obligations reflected in these documents in his individual capacity and not on behalf of T&C. The court rejects this theory as to the Affidavit of Custodian, which was clearly signed by Theriot in a representative capacity as the affidavit refers to "I, T&C Marine" and was signed over the line labeled "custodian." There is no real dispute that T&C was the appointed custodian. The Hold Harmless Agreement is somewhat ambiguous, though it seems the only reasonable reading of that document is that Theriot signed it in his capacity as representative of T&C because T&C was the appointed custodian. In any event, as discussed below, because the court finds that Guilbeau has not stated a claim for fraud in any event, the court does not address whether Theriot, and not T&C,

7

assumed individual responsibility for the obligations undertaken in the Affidavit of Custodian and Hold Harmless Agreement.

As clarified in reply, Guilbeau is also seeking to impose personal liability on Theriot as a member of T&C under the fraud exception to a limited liability company member's statutory protection from personal liability. "[I]n general, members of a limited liability company are not liable for the debts, obligations, or liabilities of the limited liability company." Leon v. Diversified Concrete, LLC, 225 F. Supp. 3d 596, 601 (E.D. La. 2016). But La. Rev. Stat. § 12:1320(D) provides an exception to the general rule in the case of fraud, breach of professional duty, or "negligent or wrongful acts." Id. see Ogea v. Merritt, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 897. In this context, as elsewhere in Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Ogea v. Merritt, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 897–98 (quoting La. Civ. Code. art. 1953).

In its proposed Amended Complaint, Guilbeau cites assertions from the Affidavit of Custodian and the Hold Harmless Agreement and then counters that Theriot and T&C did not meet the obligations and "upon information and belief" had no intention of meeting those obligations. For example, it points out that Theriot asserted in the Hold Harmless Agreement that he believed he had "adequate facilities and supervision for and can safely keep the vessel." Guilbeau alleges that Theriot and T&C did not do so and that "[u]pon information and belief, neither Theriot, nor T&C Marine, had any intention of providing a facility or supervision for the safe keeping of the M/V CHAD G." Guilbeau similarly challenges the statements in the Hold Harmless Agreement that Theriot would provide gangway guard and that he has adequate insurance, as well as the statement in the Affidavit of Custodian that the custodian would, at no time, "leave my post or let

the ship or property out of my sight without  being relieved." Guilbeau further challenges the

statement in the Affidavit of Custodian that the custodian would abide by the general rules, which

include the requirements that it accept instructions from USMS personnel only,  not allow visitors

on the vessel, and be alert and report any unusual circumstances. Guilbeau alleges that T&C and

Theriot took direction from the seizing creditor and that they failed to report unusual circumstances

of someone cutting locks on the boat to USMS. Guilbeau does not allege that Theriot did not intend

to meet these obligations when he signed the Affidavit of Custodian.

These allegations do not meet the standard necessary to state a claim for fraud. Guilbeau

does not contend that any of the statements made by Theriot were objectively false at the time he

made them. It contends that when Theriot stated what he believed he would be able to do and

undertook certain obligations (personally or on behalf of T&C), he did so with the intent not to

comply with those obligations. These assertions are made "upon information and belief" and

without any factual basis upon which this court could conclude that Theriot had such an intent. If

this were enough, every single breach of contract action could include the statement that the obligor

never intended to comply with the obligations undertaken. If this is Guilbeau's theory, it must

plead at least some facts to make such a conclusion plausible. As plead, the court finds Guilbeau's

fraud claim is futile.

Guilbeau's claims under La. Rev. Stat. §1328 and Civil Code article 2036 are similarly

problematic. Guilbeau alleges "upon information and belief" that T&C has been insolvent since

January 2019 and that "upon information and belief," Theriot caused T&C to distribute draws to

himself that increased T&C's insolvency. Not one fact is alleged that would support such a

conclusion. Guilbeau offers no explanation for its beliefs. It cannot simply make unfounded,

unsupported, unverified, and conclusory statements in support of its claim to have some unknown

transactions reversed. To the extent discovery or investigation later reveals some factual basis to support a revocatory action, Guilbeau may seek to raise such a claim at that time.[6]

The remaining factors of undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, and prejudice do not weigh strongly in favor of allowing or disallowing the amendment. Accordingly, because Guilbeau's claims, as plead, are futile, the proposed amendment cannot be allowed. Although Guilbeau correctly points out that merits briefing is often the better stage to assess the viability of new claims, where, as here, the claims as plead completely fail to meet the pleading standards, it would be a waste of judicial resources to allow the amendment only to be followed by a motion to dismiss.

<u>Conclusion</u>

For the foregoing reasons, Guilbeau's Motion for Leave to Amend (Rec. Doc. 19) is DENIED.

New Orleans, Louisiana, this 13th day of August, 2020.

Janis van Meerveld
United States Magistrate Judge

---

[6] As to T&C's challenge that Guilbeau cannot assert a claim under Civil Code article 2036 because it has not been reduced to judgment, as Guilbeau notes in reply, the comments to that code article provide that "[a]n obligee's claim does not have to be liquidated to judgment to be considered an anterior debt." La. Civ. Code art. 2036 comment (f). Neither party addresses whether this same theory allows Guilbeau to assert a claim under La. Rev. Stat. §12:1328, which it appears Guilbeau seeks to do on behalf of T&C via an oblique action under Civil Code article 2044.